## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 CR 1044 | DATE | 2/4/2002 |
| CASE TITLE | USA vs. Felix Vasquez-Ruiz | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached order, defendant's motion to preclude evidence regarding unnamed patients (48-1) and his motion to preclude the testimony of proposed physician expert witnesses (49-1) are denied; defendant's motion to preclude the testimony of proposed statistician expert witnesses (47-1) and his motion to preclude evidence from insurance company witnesses (46-1) are granted in part and denied in part; the government's motion for admission of other act evidence (42-1) is conditionally granted in part and denied in part; the government's motion in limine (45-1 through 10) is granted in part and denied in part. Trial date of 2/11/02 at 9:30 a.m. to stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB 0 6 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 57 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| OR | courtroom deputy's initials | 02 FEB -5 PM 4:40 | date mailed notice | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 00 CR 1044 |
| | ) | |
| FELIX VASQUEZ-RUIZ | ) | |

**DOCKETED**
FEB 0 6 2002

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Defendant Felix Vasquez-Ruiz, a medical doctor, is charged with seven counts of mail fraud in violation of 18 U.S.C. §1341 and eighteen counts of health care fraud in violation of 18 U.S.C. §1347. He is alleged to have conducted a scheme that involved ordering medically unnecessary tests for patients, making the patients believe they needed the tests, making false entries in the patients' records to justify the tests, and submitting over $400,000 in fraudulent bills to insurance companies. The case is set for trial on February 11, 2002. In this Memorandum Opinion and Order, the Court rules on the parties' motions *in limine*.

**A.     Defendant's motions**

**1.     Evidence regarding patients not named in indictment or bill of particulars**

Dr. Vasquez-Ruiz no doubt saw thousands of patients over the three and one-half year period involved in the alleged scheme. The indictment, however, did not identify the patients who had received unnecessary tests, the bills or claims alleged to be fraudulent, or even the types of tests claimed to be unnecessary. The Court did not believe that the indictment or the discovery produced by the government provided the defense with sufficient information regarding these

1

crucial points. For this reason, the Court entered an order granting in part defendant's motion for a bill of particulars; we directed the government to provide, no later than 60 days prior to trial, a bill of particulars "identifying all patient-victims of the alleged offenses, all records claimed to include false entries, and all allegedly fraudulent bills to insurers." *United States v. Vasquez-Ruiz*, 136 F. Supp. 2d 941, 944 (N.D. Ill. 2001).

Pursuant to this order, the government provided Dr. Vasquez-Ruiz with a bill of particulars which listed persons in several categories. First, the government identified twenty-eight patient-victims who might be called as witnesses and stated that certain family members of these persons might also be patient-victims and might be called to testify. Bill of Particulars at 2. Second, the government listed twenty-two additional patient-victims whose medical records and claims "appear[ ] to contain false statements," stating that it "may call some or all of these individuals (as well as certain family members who may also be victim patients) as witnesses at trial." *Id.* at 3. Third, the government generically identified as victims "[p]atients who had Nerve Conduction Velocity ("NCV") testing without having an EMG test" – information which it said was shown by medical records and insurance records that it had produced in discovery. *Id.* at 4. Fourth, it generically identified patients whose records had been reviewed by certain doctors (in a few instances the bill of particulars named the patients), *id.* at 4-6, including in one instance "patients who were selected as a random statistical sampling." *Id.* at 5. Finally, the government referenced certain records which it said included the names of patient-victims who might be called to testify, for example, "[l]ist of [Blue Cross / Blue Shield] files that were selected for random statistical sampling"; "[l]ist from United Food and Commercial Workers Union, Local 1540"; and the like. *Id.* at 6-8.

Defendant argues that the government should not be permitted to offer evidence regarding patients who were not specifically named in the bill of particulars; in other words, he objects to evidence regarding the patients who were only identified generically. The purposes of a bill of particulars include "'inform[ing] the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, [and] avoid[ing] or minimiz[ing] the danger of surprise at time of trial.'" *United States v. Roman*, 728 F.2d 846, 856 (7th Cir. 1984) (quoting *United States v. Haskins*, 345 F.2d 111, 114 (6th Cir. 1965)). Consistent with these purposes, the effect of a bill of particulars is to limit the scope of the government's proof at trial. *Haskins*, 345 F.2d at 114; *see also, e.g., United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985); *United States v. Flom*, 558 F.2d 1179, 1185-86 (5th Cir. 1977); *United States v. Mariani*, 90 F. Supp. 2d 574, 591 n.18 (M.D. Pa. 2000); *United States v. Allied Asphalt Paving, Inc.*, 451 F. Supp. 804, 812 (N.D. Ill. 1978).

As a result of the government's generic listings, it is not clear whether the bill of particulars provided the defense with much more focus than it had from the indictment and discovery itself – in other words, the lack of specificity that led the Court to order a bill of particulars in the first place. But defendant never asked the Court to strike the government's bill of particulars or to require the government to provide greater specificity. And it appears undisputed that all the persons who the government now claims were victims were identified, at least generically, in the bill of particulars. Thus there is no basis to preclude the government from calling these persons at trial or offering evidence concerning their medical treatment by Dr. Vasquez-Ruiz.

Defendant also argues that the government should be precluded from offering evidence

3

regarding patient-victims and fraudulent billings that it did not have at the time the indictment was returned. The Court disagrees. The use at trial of after-acquired evidence is in no way inconsistent with defendant's Fifth Amendment right to be tried on charges returned by a grand jury, so long as the evidence at trial does not prove facts materially different from those alleged in the indictment or any bill of particulars, *United States v. Hach*, 162 F.3d 937, 947-48 (7th Cir. 1998) (describing what constitutes a "fatal variance"), or, to put it another way, so long as the evidence does not convict the defendant of "an offense not charged in the indictment" by "broadening the possible bases for conviction from that which appeared in the indictment." *United States v. Miller*, 471 U.S. 130, 138 (1985), *quoted in United States v. Pigee*, 197 F.3d 879, 887 (7th Cir. 1999). The government is not required to present all its evidence to the grand jury, and it follows that the return of an indictment does not limit the government to the evidence it had at that moment.

For these reasons, the Court denies defendant's motion to preclude evidence regarding patients not named in the indictment or the bill of particulars.

2.   **Testimony of Steve Sulpor and Klaus Miescke**

Defendant has moved to exclude the testimony of two statisticians, Steve Sulpor and Klaus Miescke, who defendant believes will be called to testify that they selected a random and representative sample of defendant's patient files, which were then evaluated by certain expert witnesses (whose testimony is discussed in the next section of this Memorandum Opinion). In response, the government says that it seeks to offer only "very limited testimony" from these witnesses: that they randomly selected the patient files using a computer program. *See* Government's Consolidated Response to Defendant's Motions In Limine at 12-13. The Court

agrees that such evidence is relevant and admissible. The statisticians may not, however, testify that the sample is representative of the totality of Dr. Vasquez-Ruiz's patients, for based on the present record that appears to be beyond their competence.

### 3. Comparison testimony by insurance company representatives

The government proposes to offer testimony from representatives of various insurance companies regarding the number and proportion of their insured patients of Dr. Vasquez-Ruiz and received certain tests. By way of example, the government says that a representative of Great West Insurance Company will testify that Dr. Vasquez-Ruiz submitted claims to that company for 102 patients, and that he ordered nerve conduction velocity tests for seventy-seven of them and something called an "SSEP" test for seventy-three of them. *See* Government's Consolidated Response to Defendant's Motions In Limine at 13-14. It contends that this evidence is admissible to prove that Dr. Vasquez-Ruiz acted knowingly and did not order the tests by mistake.

The Court agrees with the government that the fact that Dr. Vasquez-Ruiz repeatedly ordered certain types of tests tends to show that he acted knowingly and not by mistake or accident; thus that evidence is relevant and admissible. But that does not mean that the evidence of the overall proportion of patients for whom he ordered the tests is also admissible. The Court is not persuaded that this type of statistical comparison is relevant (among other things, there is no indication that the sample in question is random, and the government has not hinted at any evidence it proposes to offer explaining why the percentage is significant), and even if relevant it would be unfairly prejudicial in a way that far outweighs any probative value of the comparisons. Thus, though the Court will permit the government to offer the insurance representatives'

testimony concerning defendant's repeated ordering of the tests, we will exclude testimony from the representatives regarding the overall number of patients as to whom claims were made or the proportion of claims that included the tests.

4.      **Testimony of Drs. Friedman, Frank, and Aaronson**

The government proposes to call as expert witnesses[1] an internist, Dr. Mark Friedman; a neurologist, Dr. Helge Frank; and an allergist, Dr. Donald Aaronson. Each of these witnesses will testify that he or she reviewed patient records for persons treated by Dr. Vasquez-Ruiz and that certain testing that he ordered for the patients was not medically necessary. Defendant has moved to exclude this testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). He argues that the term "medical necessity" has no generally accepted meaning, that such testimony is nothing more than the subjective opinion of the witnesses, and that the witnesses lack the qualifications to make such a determination.

Under *Daubert*, scientific testimony is admissible only if two requirements are met: first, the expert offering the testimony must have "genuine expertise" or "scientific knowledge," and, second, that expertise must assist the trier of fact to understand or determine a fact in issue. *Daubert*, 509 U.S. at 592. In other words, to be admissible, the expert testimony must be both reliable and relevant. There is no question that the government experts' opinions are relevant to determination of whether defendant had the requisite intent to defraud; the issue is whether those opinions are sufficiently reliable to be admissible.

---

[1] The pattern jury instructions for this Circuit no longer use the term "expert." *See* Seventh Circuit Federal Jury Instructions (Criminal) 3.07 (1999). At trial, the Court expects counsel to refrain from using this term in the jury's presence.

6

In *Daubert*, the Supreme Court gave a non-exhaustive list of factors for determining whether scientific testimony is sufficiently reliable to be admitted into evidence, including whether the scientific theory or technique can be and has been tested; whether it has been subjected to peer review and publication; whether there is a known or potential error rate; and whether it is generally accepted in the relevant scientific community. *Id.* at 593-94. But this list is not designed to serve as a "definitive checklist or test"; the *Daubert* inquiry is "a flexible one," *id.* at 594, that "neither necessarily nor exclusively applies to all experts in every case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). It is designed to ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

The government has not done a particularly good job in its response to defendant's motion of explaining whether its experts utilized objective or commonly accepted criteria for determining whether, in any given instance, a particular test was medically necessary. But the Court sees no need to hold a pretrial evidentiary hearing on the subject, as we are confident that a basis sufficient under *Daubert* will be supplied on the witnesses' direct examination. The rendering of opinions regarding the nature, quality, and appropriateness of medical care is a routine part of much civil litigation, and it has likewise been approved in the criminal context. *See United States v. Rutgard*, 116 F.3d 270, 1281 (9th Cir. 1997).

Defendant argues that the experts' assessment of the necessity for the tests in question is subjective and thus inadmissible. But what defendant calls subjectivity is better characterized as the exercise of judgment. The fact that an expert's analysis involves an element of judgment

7

does not make it inadmissible under *Daubert*. Practicing physicians make such judgments every day, and those judgments unquestionably involve the application of scientific method. The only difference between that and what the government's witnesses propose to do is that the witnesses will be making their judgments based on review of patient records rather than examination of the patient.

Among the factors bearing on the scientific validity of an expert's testimony are her qualifications. *Ancho v. Pentek Corp.*, 157 F.3d 512, 518 (7th Cir. 1998). Though the Court can make no definitive finding regarding the witnesses' qualifications to perform the analysis question until they testify, it certainly appears from their *curricula vitae*, which the government has attached to its response to defendant's motion, that they are experienced in their respective fields and sufficiently qualified to render opinions regarding the nature and appropriateness of medical care in those fields based on review of patient records.

In sum, the Court is satisfied that the opinion in question is grounded upon "'a reliable basis in the knowledge and experience in the discipline.'" *Kumho Tire*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). Defendant's motion *in limine* is therefore denied, subject to renewal if the government fails to lay the appropriate foundation at trial.

**B.    Government's motions**

    **1.    Other act evidence**

The government has moved to admit evidence of uncharged conduct to prove defendant's motive and intent. First, it contends that the clinic at which Dr. Vasquez-Ruiz conducted his practice was owned and operated by John and Yolanda Todd, who provided him with office space, advertising, and employees at little or no cost. It claims that a good deal of the allegedly

8

unnecessary testing ordered by Dr. Vasquez-Ruiz was conducted by entities owned by the Todds, and that those entities, not Dr. Vasquez-Ruiz, received insurance reimbursement for the testing. The government appears to contend that Dr. Vasquez-Ruiz's receipt of free or virtually free services from the Todds and their clinic nonetheless gave him a motive to order medically unnecessary tests to benefit the Todds. For this reason, it wants to introduce evidence concerning the Todds' business relationship with Dr. Vasquez-Ruiz, the clinic, and the other entities.

Missing from the government's submission is an explanation of its basis for contending that Dr. Vasquez-Ruiz knew that the entities that would receive insurance reimbursement for the tests were owned by the same people who allegedly provided him with no-cost or lost-cost services. Without such a foundation, the evidence in question would not appear to be probative of Dr. Vasquez-Ruiz's motive or intent. But assuming such a foundation can be established, the government's evidence indeed would tend to show his motive and intent and thus would be admissible under Federal Rule of Evidence 404(b). Testing claimed to be unnecessary could have been ordered due to negligence, incompetence, or over-abundance of caution – none of which would suffice to make the conduct criminal -- or it could have been done knowingly and intentionally, which might give rise to criminal liability if all the elements of a particular offense are proven. Evidence tending to show that Dr. Vasquez-Ruiz had a motive other than personal financial gain to order unnecessary tests will assist the jury to distinguish among these various possibilities, and thus it is relevant, highly probative, and admissible under Rule 404(b).

Second, the government seeks to admit evidence that after being indicted, Dr. Vasquez-Ruiz ordered nerve conduction tests for about sixty patients, referring them to a company owned in party by his son. According to the government, the tests were ordered without another test

9

called an "EMG"; according to one of the government's experts, a nerve conduction test does not provide an adequate evaluation of the patient's condition unless an EMG is also ordered. This evidence is not part of the charged conduct, and it has only recently come to the government's attention: it says that it is still investigating the matter. Defendant objects that the government's disclosure is untimely. The Court agrees. Rule 404(b) requires that other act evidence be disclosed via "reasonable notice in advance of trial"; the Court entered an order directing disclosure of such evidence no less than thirty days prior to trial. *See* Order of April 2, 2001. It appears that the government's first disclosure that it proposed to use this evidence was made in its motion *in limine,* filed two weeks prior to trial. The government did not seek an extension of the Court-imposed deadline for disclosure of other act evidence. It would unfairly prejudice defendant in preparing for trial on these already-complex charges if he were required at this late date to deal with additional newly-disclosed and significant uncharged conduct.[2]

Third, the government says that it has subpoenaed Dr. Vasquez-Ruiz's bank records and that if these contain any false statements, it wants to be able to offer them in evidence. It has no such evidence at this time, and thus any ruling is premature. But if the government locates such evidence, before it can be offered the government will have to convince the Court that we should excuse its non-compliance with the deadline that we established, in addition to the requirements for admissibility under Rules 404(b) and 403.

For these reasons, the government's motion for admission of other act evidence is granted in part (conditioned on the establishment of a foundation as described earlier) and denied in part.

---

[2] For this reason, the Court need not address whether the proposed other act evidence is admissible under Rules 404(b) and 403.

10

### 2. Precluding improper arguments

The government has asked the Court to preclude a laundry-list of improper arguments by counsel. In this case there is no reason to believe that such arguments will be made. We are in full agreement with the defense's response to the motion and will therefore quote it here: "[w]e do not believe the attorneys in this case, on either side, need a rudimentary less on proper argument or a pretrial gag order." Defendant's Response to Government's Motions In Limine at 6. If improper arguments are made and objected to, the Court will strike them, and counsel will be admonished. The government's motion *in limine,* however, is denied as unnecessary.

### 3. Motion to exclude witnesses

The Court will exclude from the courtroom all potential witnesses, other than the government's two case agents (one from the FBI and one from the Department of Labor), to whose presence defendant does not object. The government offers no basis, however, to permit other "summary witnesses" to be present during trial, and the Court cannot perceive any reason to make further exceptions to the order of exclusion.

### 4. Motion for reciprocal discovery

In addition to its *in limine* requests, the government has asked the Court for an order of reciprocal discovery. We will make such an order, though the government's request exceeds the scope of the Federal Rules of Criminal Procedure in several respects. First, Rule 16(a)(1)(A) requires the production only of documents and things "which the defendant intends to introduce as evidence in chief at the trial," and not everything the defendant may "mark as an exhibit." Second, Rule 12.1 requires notice only of a defense of alibi, and then only "[u]pon written demand of the attorney for the government stating the time, date, and place at which the alleged

11

offense was committed" (a statement not contained in the government's motion); it does not require notice of "the defense of necessity or coercion," as the government requests. Third, Rule 12.2 requires notice only when the defendant "intends to rely upon the defense of insanity at the time of the alleged offense" or "intends to introduce expert testimony relating to a mental disease or defect or any other mental condition of the defendant bearing upon the issue of guilt." Though Rule 16 permits a court, upon a proper showing, "to order broader discovery in appropriate cases," see Fed. R. Crim. P. 16, 1974 Advisory Committee Note, the government has made no effort to justify the broader requests included in its motion. With these exceptions, the government's motion for reciprocal discovery is granted.

The Court grants the government's request for reciprocal disclosure of evidence that defendant will offer pursuant to Federal Rule of Evidence 404(b), but because the request is made so late in the day, we will not require pretrial disclosure. Rather, defendant is directed to disclose any such evidence on or before February 13, 2002 (the first day on which evidence will be presented at trial).

Finally, the government has asked the Court to permit it to offer what it calls "transcriptions of certain medical records," to aid the jury in reviewing those records. Dr. Vasquez-Ruiz, like most physicians, hand-wrote information on his patients' charts, and in some respects his handwriting is difficult to decipher. The government evidently had someone (it does not say who) prepare a typewritten version of the charts, and it wishes to offer them in evidence. Defendant objects to this, saying that the "transcriptions" are actually subjective interpretations of the handwritten documents. Based on the Court's review of an example attached to the government's motion, defendant is correct to a certain extent. The handwritten patient charts

contain numerous abbreviations, and in some (though not all) instances the transcription spells out the actual words that supposedly were meant by the abbreviations. But that does not render the transcriptions inadmissible. They are, roughly speaking, the equivalent of a combination of two types of evidence that are not particularly uncommon: transcripts of tape recordings, and testimony regarding the meaning of "code words" or jargon used in recorded or other conversations. *See, e.g., Untied States v. Scott,* 243 F.3d 1103, 1107-08 (8th Cir. 2001). *Cf. United States v. Harris,* 56 F.3d 841, 942 (7th Cir. 1995) (referring to a defendant who had helped the government "translate tape- recorded conversations conducted in code"). Accordingly, assuming the proper foundation is laid, and an appropriate limiting instruction given, the transcriptions will be admissible. The foundation would include testimony describing what the "translator" did to prepare the transcriptions, testimony that they accurately record what was on the originals, except for abbreviations, and an explanation of the source(s) of information the translator used to determine what the abbreviations meant.[3] When the documents are offered, and again at the conclusion of the evidence, the Court will instruct the jury that the handwritten patient records are the evidence, that the transcriptions are not evidence but are offered only to aid in their understanding of the actual evidence, and that to the extent the two differ the jurors are to rely on the handwritten documents and not the transcriptions. The Court requests the parties to develop an agreed proposed instruction, or alternate versions of a proposed instruction, and to provide it to the Court by the close of business on February 11.

---

[3] We leave it to the parties to propose other elements that ought to be included in a proper foundation.

5. **Supplemental motion *in limine***

On January 29, 2002, the government filed a supplemental motion *in limine*, seeking a ruling on whether it can call a handwriting and ink analysis expert to testify. Defendant objects to the calling of this expert, arguing that the government failed to make a timely disclosure of its intention to call the expert to testify at trial.

On August 15, 2001, the Court entered an order directing the government to make its disclosures pursuant to Federal Criminal of Procedure 16 by September 28, 2001. The required disclosures included the government's expert witness disclosures under Rule 16(a)(1)(E), which requires the government to provide a written summary of the expert testimony that it plans to use during its case in chief, describing "the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications."

Prior to the Court's order, on July 24, 2001, the government had sent defense counsel a letter stating that it planned to call at trial Drs. Frank, Aaronson, and Friedman, statisticians Sulpor and Miescke, and a Spanish interpreter. The letter also stated the following:

> I anticipate that Vincento Munoz will give a lay person's opinion concerning Dr. Vasquez's handwriting, identifying Dr. Vasquez's handwriting in certain patient files. We may decide to submit certain documents for handwriting analyses. If so, we will provide the results of the handwriting analyses to you as soon as we get it. No final decision has been made yet.

Letter of July 24, 2001, p.2. The letter did not suggest any intention to call a handwriting expert (nor did it identify an expert), and it did not mention the possibility of ink analysis.

On August 9, 2001, the government sent defense counsel a letter stating that it had submitted charts for twenty-six patients of Dr. Vasquez-Ruiz to the FBI laboratory for handwriting analysis. The letter attached a list of the names of the patients, and it stated, "I will

14

provide a CV of the handwriting examiner as soon as I know who the examiner will be. I will provide the handwriting results as soon as they are available." Letter to August 9, 2001, p. 1. Again, the letter did not say that a handwriting expert actually would be called, and it did not mention the possibility of ink analysis.

On September 26, 2001, the government sent defense counsel a letter enclosing an FBI crime laboratory report dated August 27, 2001 concerning handwriting comparisons and ink analysis. Two days later, on September 28, 2001, the government faxed defense counsel another FBI laboratory report, dated September 24, 2001, concerning the same topic. Neither communication said anything about the possibility of expert testimony or the qualifications of any proposed expert. Finally, on October 26, 2001, the government sent defense counsel a letter which listed persons that the government planned to call as experts; the letter made no mention of an expert on handwriting or ink analysis.

The government maintains that "[h]aving sent both [FBI crime laboratory] reports, the government satisfied its obligations under Rule 16, in that the government presented to the defense the relevant reports concerning the subject of the expert's testimony." Government's Supplemental Motion In Limine, p. 3. This is incorrect in two respects. First, the Rule unambiguously requires disclosure of the expert's qualifications. This was not done by the government at or prior to the time ordered by the Court, or indeed at any time prior to January 28, 2002 – just two weeks before the start of trial. Second, in this case at least, merely providing copies of laboratory reports did not satisfy the government's obligation under Rule 16(a)(1)(E). The Rule "requires a summary of testimony," *see United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001), and the reports included nothing of the kind. Rather, they simply stated a conclusory

15

one or two sentence opinion regarding a list of documents. The Rule plainly requires not just disclosure of the expert's opinion, but also of the bases and reasons for the opinion; the government never made such a disclosure (and has not done so to this date).[4]

The government might have always had an intention to call a handwriting expert, but it did not disclose that intention to the defense in the time or manner required by the Court's order and Rule 16(a)(1)(E). The Court set the deadline for expert witness disclosure for several reasons: to avoid unfair, last-minute surprise; to enable the defense to determine whether to call its own experts; and to permit questions regarding the propriety of proposed expert testimony to be addressed prior to trial. Each of these reasons would be defeated if the Court were now to permit the government to call its belatedly-disclosed expert. The government's proposed alternative – allowing defendant to submit the materials to its own expert now – is no alternative at all; it truly would be unfair and prejudicial to the defense, and would defeat the purpose of the Court's order, to require counsel to spend the final days before trial scrambling to locate and work with a handwriting analyst. In addition, defense counsel stated in her oral response to the government's motion that she would raise a *Daubert* objection to the testimony of the government's expert, and the Court credits that claim: there are significant issues concerning the admissibility of testimony concerning handwriting comparisons. *See, e.g., United States v. Fujii*, 152 F. Supp. 2d 939 (N.D. Ill. 2000). Permitting the government to make its disclosure now essentially would force the Court to continue the trial, a course we are unwilling to take (having

---

[4] On January 28, 2002, the government produced to the defense what appears to be the handwriting / ink analyst's working file. Even if this had been timely disclosure (it was not), mere production of a sheaf of papers does not constitute disclosure of the basis and reasons for an expert's opinion, which is what the Rule requires.

16

set aside the trial date months ago) and exactly what we intended to avoid when we set the expert disclosure date. For these reasons, the Court denies the government's supplemental motion *in limine*; the government may not call the handwriting / ink analysis expert to testify.

## Conclusion

For the reasons stated above, defendant's motion to preclude evidence regarding unnamed patients [docket item 48-1] and his motion to preclude the testimony of proposed physician expert witnesses [49-1] are denied; defendant's motion to preclude the testimony of proposed statistician expert witnesses [47-1] and his motion to preclude evidence from insurance company witnesses [46-1] are granted in part and denied in part; the government's motion for admission of other act evidence [42-1] is conditionally granted in part and denied in part; the government's motion *in limine* [45-1 through 10] is granted in part and denied in part; and the government's supplemental motion *in limine* 50-1] is denied. The case is held for trial on February 11, 2002 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 4, 2002