# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 CR 1044 | DATE | 8/9/2002 |
| CASE TITLE | USA vs. Felix Vasquez-Ruiz | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, the Court denies defendant's motion for judgment of acquittal and his motion for new trial (87-1 & 2), and grants the government's request for forfeiture, in the amount of $69,000. The Court has also become aware that the Clerk's Office has categorized docket item 43-1 (the bill of particulars) as a pending motion; it is not a pending motion and is therefore terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | Document Number |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | AUG 12 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 104 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | Case No. 00 CR 1044 |
| ) | |
| FELIX VASQUEZ-RUIZ ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

After an eight day trial, a jury convicted defendant Felix Vasquez-Ruiz, a medical doctor, of seven counts of mail fraud under 18 U.S.C. §1341 and twenty counts of health care fraud under 18 U.S.C. §1347. Vasquez-Ruiz has moved for a judgment of acquittal or in the alternative for a new trial.

The indictment also contained forfeiture allegations pursuant to 18 U.S.C. §982(a)(7). After the verdict was returned, Vasquez-Ruiz waived his right to have the jury decide the forfeiture issue and agreed to submit it to the Court. The parties have submitted briefs on the issue.

We address these points in turn.

1.  **Motion for judgment of acquittal**

To convict a defendant of mail fraud, the government must prove: "(1) the defendant's knowing participation in a scheme to defraud; (2) the defendant's intent to defraud; and (3) the defendant's use of the mail ... in furtherance of the fraudulent scheme." *United States v. Davuluri*, 238 F.3d 902, 906 (7th Cir. 2001). A conviction for health care fraud requires proof that the defendant knowingly executed a scheme to defraud a health care benefit program in

104

connection with payment for health care benefits. 18 U.S.C. §1347.

The evidence at trial, taken in the light most favorable to the government as the Court is required to do when considering a motion for judgment of acquittal, *see, e.g., United States v. Benjamin,* 116 F.3d 1204, 1206 (7th Cir. 1997), was sufficient to prove beyond a reasonable doubt that Vasquez-Ruiz repeatedly ordered unnecessary medical tests for patients and made false entries in their records in an effort to justify the tests. The evidence also was sufficient to prove that Vasquez-Ruiz did this knowing and intending that the entities that performed the tests, which were owned by Vasquez-Ruiz's sister-in-law Yolanda Todd and her husband John Todd, would submit claims via the mail to health insurers seeking reimbursement. Finally, the evidence was sufficient to prove that Vasquez-Ruiz intended to defraud the insurers: the jury reasonably could find that Vasquez-Ruiz, an experienced physician, was aware that insurers typically make reimbursement only for tests that are necessary and that had they known the tests were unnecessary, they would not have approved reimbursement. This evidence established all of the elements of the offenses of which Vasquez-Ruiz was convicted.

The fact that Vasquez-Ruiz was not a party to the insurance contracts under which the tests were billed, and did not himself bill for any of the tests, does not preclude a guilty finding. Neither statute under which Vasquez-Ruiz was convicted requires proof that the defendant received direct financial gain from his conduct. Indeed, the law defines intent to defraud as "'acting willfully and with specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self *or* causing financial loss to another,'" *Davuluri,* 238 F.3d at 906 (emphasis added) (quoting *United States v. Moede,* 48 F.3d 238, 241 (7th Cir. 1995)), not as requiring *both* financial gain to oneself *and* financial loss to the victim. And in any event, the

2

jury reasonably could infer that Vasquez-Ruiz benefitted from the scheme, albeit indirectly: he received from the Todds office space, staff, and marketing services without having to pay for it. The government offered no direct evidence of an express agreement to this effect, but the jury could infer from the circumstances that an understanding, either express or tacit, had existed.

The mail fraud charges were alleged in the alternative – they permitted a conviction based on a theory that Vasquez-Ruiz had deprived his patients of their right to his honest services. *See* 18 U.S.C. §1346 (providing that the phrase "scheme or artifice to defraud" as used in the mail and wire fraud statutes includes a scheme "to deprive another of the intangible right of honest services."). Vasquez-Ruiz argues that this phrase does not extend to a physician's duties to his patients, and that in any event the evidence failed to sustain an "honest services" theory. The Court disagrees on both counts. A fiduciary duty is implicit in the relationship between physician and patient. *See, e.g., United States v. Humphrey*, 279 F.3d 372, 380 (6th Cir. 2002) (dictum); *United States v. Neufeld*, 908 F. Supp. 491, 499-500 (S.D. Ohio 1995). The decision in *United States v. Jain*, 93 F.3d 436 (8th Cir. 1996), cited by Vasquez-Ruiz, is not to the contrary; it simply holds that an "honest services" theory in the doctor-patient context cannot be sustained without proof that the scheme adversely affected the quality or cost of the care provided to patients. *See id.* at 442. In this case the government proved that it did; Vasquez-Ruiz subjected his patients to unnecessary tests and, at least in some instances, failed to diagnose or treat their actual ailments.

For these reasons, the Court denies Vasquez-Ruiz's motion for a judgment of acquittal.

2.  **Motion for new trial**

Vasquez-Ruiz has also moved for a new trial. His first three grounds involve allegedly

erroneous rulings on pretrial motions *in limine*. Because Vasquez-Ruiz makes no new arguments on these points, and because the Court remains convinced that its rulings on these matters were correct, we reject these arguments without further discussion. Vasquez-Ruiz's fourth argument concerns the giving of an "honest services" instruction; this instruction was supported by the law and the evidence, as discussed in the prior section of this Opinion.

In his fifth argument, Vasquez-Ruiz contends that the Court erred in permitting the government, over objection, to cross-examine Vasquez-Ruiz by reciting the testimony of certain patient-witnesses that certain entries in medical records were inaccurate then asking him whether he maintained that the entries were accurate. There was nothing wrong with allowing the government to proceed in this fashion; Vasquez-Ruiz was not asked to opine on the truthfulness of any other witness.

Vasquez-Ruiz's final argument in support of his motion for new trial concerns a situation that came to light near the end of the trial. One of the jurors, the only Latino-American on the jury, reported that someone had written the word "guilty" in her juror notebook; she initially said that she felt intimidated and wanted to be excused from the jury. After the Court questioned the juror in chambers in the presence of counsel and the defendant, the juror stated that she could be fair to both sides and no longer felt intimidated. Vasquez-Ruiz asked that the juror not be excused, and the Court agreed with this request.

Vasquez-Ruiz argues that this episode reflects that another juror had made up his or her mind regarding the defendant's guilt before the end of the trial. It is anything but certain that the notation was made by another juror in this case. The Court's practice at the time had been to reuse juror notebooks from prior cases after removing all pages that had been written upon. It is

entirely possible that the notation had been made in a prior case, not by a juror in this case, but had not been removed due to a clerical error.[1] In any event, following discovery of the incident, the Court gave clear and straightforward curative instructions to the entire jury, reminding them that the defendant was presumed innocent, that the presumption of innocence remained in effect at all stages of the trial, and that it was vitally important for each juror to keep an open mind until he or she had heard all of the evidence, the lawyers' arguments, and the Court's instructions, and that if any of the jurors was unable to abide by these instructions he or she was duty-bound to advise the Court. The jury is presumed to have followed those instructions.

For these reasons, the Court denies Vasquez-Ruiz's motion for new trial.

### 3. Forfeiture

The forfeiture provision relied upon by the government provides that "[t]he court, in imposing sentence on a person convicted of a federal health care offense, shall order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense." 18 U.S.C. §982(a)(7). The government is required to prove the elements of the forfeiture claim by a preponderance of the evidence. *See United States v. Vera*, 278 F.3d 672, 673 (7th Cir. 2002); *United States v. Patel*, 131 F.3d 1195, 1200 (7th Cir. 1995).

The government seeks forfeiture of the value of the services and benefits that it contends Vasquez-Ruiz received from the Todds in return for or as a result of ordering unnecessary medical tests; it says these benefits included free rent, patient referrals, and clerical and medical

---

[1] The Court now uses new notebooks in criminal cases and has the court security officer collect the notebooks at the end of each day so that they are not sitting in the jury room available for other jurors to write upon.

5

support services, the total value of which, it contends, exceeded $400,000. The government's bill of particulars, submitted in response to an order by the Court directing it to identify "the specific items of property (including money and substitute assets, if any) that the government claims are subject to forfeiture," *United States v. Vasquez-Ruiz*, 136 F. Supp. 2d 941, 944 (N.D. Ill. 2001), stated that the government was seeking forfeiture of $400,000, either in gross proceeds traceable to the commission of the health care fraud offenses, or in substitute assets. Vasquez-Ruiz complains that the bill of particulars did not set forth the government's "services and benefits" theory, but the Court's order did not require this, so it is not a basis to preclude the government from pursuing this theory.

Vasquez-Ruiz next argues that the services and benefits he allegedly received do not constitute "property, real or personal" within the scope of §982(a)(7). The parties have not cited, and the Court has not found, any authority discussing whether the value of benefits provided as a sort of *quid pro quo* for the commission of a health care offense (as in this case) can be forfeited under §982(a)(7). The government cites several cases authorizing forfeiture of salaries, bonuses, and the like, but two of them appear to have been decided under statutes authorizing forfeiture of "any interest" that the defendant maintained in violation of the law, language not found in §982(a)(7). *See United States v. DeFries*, 129 F.3d 1293, 1312-13 (D.C. Cir. 1997) (18 U.S.C. §1963(a)(1)); *United States v. Horak*, 833 F.2d 1235, 1242-44 (7th Cir. 1987) (same). The third case, however (*United States v. Masters*, 924 F.2d 1362 (7th Cir. 1991)), is more helpful to the government. In that case an attorney and two police officers were convicted of racketeering and racketeering conspiracy under 18 U.S.C. §§1962(c) & (d) in connection with a series of schemes involving the payment of bribes by the attorney to these and other officers to fix cases of certain

of the attorney's clients. The jury ordered the defendant to forfeit $42,000, the amount of bribes paid by clients whose cases were fixed via the bribery scheme. The Court of Appeals found that this amount constituted proceeds of the scheme that were properly forfeitable. *Id.* at 1369-70. Vasquez-Ruiz correctly points out that in *Masters*, the bribes were the direct proceeds of the scheme, whereas in this case the direct proceeds were the insurance payments to the Todds' entities, not the benefits that the Todds provided to Vasquez-Ruiz. But §982(a)(7) specifically permits forfeiture of property "derived, directly or indirectly, from gross proceeds." Thus as in *Masters*, benefits that Vasquez-Ruiz derived from the proceeds of the unnecessary testing are properly forfeitable.

We turn, therefore, to determination of whether the government has met its burden of proof regarding the sum it seeks to forfeit. As discussed earlier, the government's theory is that the office space and services that Vasquez-Ruiz received from the Todds free of charge were a *quid pro quo* for generating the false insurance claims, or at least were his share of the insurance proceeds. Though there was no evidence of an express agreement to this effect, the evidence circumstantially or at least inferentially establishes that Vasquez-Ruiz had a tacit understanding in this regard. Vasquez-Ruiz had a lease which required him to pay $3,000 a month for rent, but after paying the first month's rent he never made another payment, and the Todds did not attempt to collect, did not terminate his tenancy, and took no steps to enforce their rights under the lease until a fairly late date, when they filed suit in state court (but evidently took no steps to pursue it, as Vasquez-Ruiz testified that it was still pending at the time of the trial in this case). The Todds provided other valuable services to Vasquez-Ruiz without charge, including a staff of people whose job duties included going out into the community to drum up business for Vasquez-Ruiz.

7

There was no rational reason for Vasquez-Ruiz knowingly and repeatedly to order unnecessary testing without getting something in return, and there was no rational reason for the Todds to do what they did for him without an understanding that they would be getting something of significant value in return. Vasquez-Ruiz himself torpedoed the primary alternative rational explanation when he testified that he did not get along with Yolanda Todd, who ran the clinic, and the frequency of the unnecessary testing along with the false record entries undermines any suggestion that Vasquez-Ruiz acted as he did due to lack of skill rather than intentionally. Based on this evidence, the Court finds that the government proved by at least a preponderance of the evidence that Vasquez-Ruiz received free rent and free services that were derived from the proceeds of the insurance fraud.

The government says that the proceeds of the insurance fraud were at least $507,000, but what it seeks to forfeit in this case is the value of the services and benefits that Vasquez-Ruiz received from the Todds, which it says were worth at least $400,000. The primary remaining issue is determination of whether the government has established that figure by a preponderance of the evidence. The services and benefits themselves (having already been provided) are not forfeitable property; rather the forfeitable property consists of the gain that Vasquez-Ruiz derived from those services. This is logically limited by what he earned from his medical practice. The government says that during the years that the scheme was in effect (1996 through 2000), Vasquez-Ruiz reported income of $285,000; as it does not argue that he understated his income, the forfeiture cannot exceed that amount.

In any event, the government has failed to prove its $400,000 figure by a preponderance of the evidence. The value of the unpaid rent, a total of $69,000, is a solid figure, as it is based

8

on a written lease. The remaining figures that the government uses to drive the requested amount over $400,000 consist of the salaries of various staff personnel, the salaries of the persons who managed the clinic, and marketing expenses claimed by the Todds' entities on their corporate tax returns. Aside from the fact that the government offered actual no evidence at trial or in its forfeiture submission regarding these figures, it has failed to show that the entirety of the salaries in question are attributable to work for Vasquez-Ruiz, as opposed to work for the Todds' entities. As Vasquez-Ruiz points out, the evidence at trial reflected that these people performed services for both Vasquez-Ruiz and the other entities, meaning that only part of their work, and thus only part of their salary, constituted a benefit to Vasquez-Ruiz. The government, however, has made no effort to apportion the amounts. With regard to the marketing expenses, the Court has been given no basis to determine that the amounts claimed on the tax returns of entities which the government contends existed primarily to carry out an elaborate fraud are in any way reliable, let alone what proportion of those figures are attributable to marketing done for Vasquez-Ruiz's medical practice. In sum, the Court concludes that the government has proven by a preponderance of the evidence only that Vasquez-Ruiz received $69,000 in property that is derived from proceeds traceable to commission of the offense.

For these reasons, the sentence in this case will include an order of forfeiture in the amount of $69,000. We reject Vasquez-Ruiz's argument that a forfeiture in this amount is a disproportionate penalty.

## Conclusion

For the reasons stated above, the Court denies defendant's motion for judgment of acquittal and his motion for new trial [docket item 87-1 & 2], and grants the government's

request for forfeiture, in the amount of $69,000. The Court has also become aware that the Clerk's office has categorized docket item 43-1 (the bill of particulars) as a pending motion; it is not a pending motion and is therefore terminated.

                                                           MATTHEW F. KENNELLY
                                                            United States District Judge

Date:   August 9, 2002